IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTRON TALLEY, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 18-1006 |
| ) | Magistrate Judge Maureen P. Kelly |
| v. ) | |
| ) | |
| DISTRICT ATTORNEY OF ALLEGHENY ) | Re: ECF No. 39 |
| COUNTY and THE ATTORNEY GENERAL ) | |
| OF THE STATE OF PENNSYLVANIA ) | |
| ) | |
| Respondents. ) | |

## MEMORANDUM ORDER

Antron Talley ("Petitioner") is a state prisoner currently incarcerated at the State Correctional Institution at Forest ("SCI-Forest") in Marienville, Pennsylvania. Petitioner seeks federal habeas relief pursuant to 28 U.S.C. § 2254 from his state criminal conviction in the Court of Common Pleas of Allegheny County at Docket No. CP-02-CR-1397-2014. ECF No. 19 at 1. Currently before this Court is Petitioner' "Motion for Discovery Pursuant to Rule 6(a) of the Rules Governing Section 2254 Cases." ECF No. 39. It is opposed by Respondents. ECF No. 42. Petitioner has replied. ECF No. 44. For the reasons stated herein, Petitioner has not met his burden to show good cause for the requested discovery, and the motion will be denied.

I.  **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

The following are the facts underlying Petitioner's conviction, as recited by the trial court in connection with Petitioner's direct appeal.

> On December 19, 2013, at approximately 9:00 a.m., the Defendant, an inmate at the Allegheny County Jail, physically assaulted Jason Arlotta while Mr. Arlotta was engaged in his duties as a Correctional Officer ("CO"). (Jury Trial Transcript ("TT"), 4/12/17 - 4/18/17, pp. 7 4, 79-84, 91-92, 94, 119, 133, 145, 162, 169). At the time of the attack, CO Arlotta was performing routine searches of the inmates' cells, and Cell 123 was one of the cells

1

subject to the search. (TT, pp. 75-77, 94-95, 204). CO Patti Farrell was present in the area while CO Arlotta conducted the cell searches. (TT, pp. 133-34, 141). Upon conducting his search of Cell 123, CO Arlotta located several items of contraband, such as extra linens, blankets, and a jail-made weight called a "water bag" that inmates use for weightlifting. (TT, pp. 75-76, 91, 96, 134-35). CO Arlotta removed the extra linens and blankets from the cell and then made an announcement for the resident of Cell 123 to return to the cell. (TT, pp. 76-77, 94-95, 135). CO Arlotta did not know who lived in Cell 123, and he had never met the Defendant prior to the day of the incident. (TT, pp. 77, 94).

The Defendant appeared and identified himself as the resident of Cell 123. (TT, pp. 77, 96, 135). The Defendant began picking up the extra linens that CO Arlotta had tossed out of the cell, and the Defendant told CO Arlotta that the CO was not going to remove the extra linens because they were his items. (TT, pp. 77, 90, 136). CO Arlotta instructed the Defendant to place the linens back down on the ground, but the Defendant "refused several orders" to do so. (TT, pp. 78, 91, 136, 140). The Defendant became aggressive and said "Fuck you, I'll go to the hole, I'm not afraid to go to the hole." (TT, pp. 78, 97, 140). The interaction clearly was starting to escalate, prompting CO Arlotta to contact Sergeant Popa via radio for assistance. (TT, pp. 79, 162). After the Defendant refused to obey CO Arlotta's orders three (3) or four (4) times, CO Arlotta ordered the Defendant to stand against the wall in an attempt to "deescalate the situation" and prevent the Defendant from continuing to pick the items up from the ground. (TT, pp. 79, 92, 136). The Defendant, however, refused to obey the order to stand against the wall, and he began walking away from CO Arlotta. (TT, pp. 79, 136-37).

At that point, CO Arlotta grabbed the Defendant by his shirt and tried to escort him to the wall so that the Defendant would know where was required to stand. (TT, p. 79). Again, the Defendant failed to comply with CO Arlotta's directives, and he "began pushing back against" CO Arlotta. (Id.). Although CO Arlotta ultimately was able to place him against the wall, the Defendant was still combative. (Id.). CO Arlotta therefore, decided to place the Defendant in handcuffs in order to prevent the situation from escalating any further. (Id.) As CO Arlotta reached for his handcuffs, the Defendant "turned aggressively" and forcefully pushed CO Arlotta. (TT, pp. 79, 215-16). The Defendant assumed a "fighting stance" and, based on his attitude, threatening body language, and refusal to obey orders, it was clear to CO Arlotta that the Defendant was preparing for a physical altercation. (TT, pp. 80, 106, 137).

The Defendant began throwing hand strikes at CO Arlotta, and CO Arlotta defended himself by throwing a hand strike which connected with the Defendant's head. (TT, pp. 80, 106-07). The two men grabbed hold of each other, and CO Arlotta attempted to bring the Defendant to the ground. (TT, p. 81 ). However, CO Arlotta slipped on a sheet and blanket that were on the floor outside of the cell, and he fell to the ground. (TT, pp. 81, 100-01 ). The Defendant took advantage of CO Arlotta's misstep by grabbing CO Arlotta's uniform and pulling him inside of the cell. (TT, pp. 81, 137).

Once they were inside of the cell, and away from the surveillance cameras, the Defendant punched CO Arlotta in the face, the side of his head, and his left eye. (TT, . pp. 81, 109, 119, 121-22, 163, 202). The Defendant's punches were so forceful that CO Arlotta's head was split open, and he suffered a concussion. (TT, pp. 81, 202). Blood began running down the side of CO Arlotta's head, and he became "woozy." (TT, p. 82). He also felt pain in his shoulder as he was being attacked. (TT, p. 83). Despite his injuries, CO Arlotta regained his footing and was able to somewhat restrain the Defendant in the back of the cell until assistance arrived. (TT, pp. 82, 130). However, the Defendant was "totally out of control" and was still striking CO Arlotta while CO Arlotta was subduing him. (TT, pp. 147, 153).

Despite his attempts, CO Arlotta was unable to gain full control of the situation until Correctional Officers Parkinson and Hanley responded to the incident. (TT, pp. 83- 84, 92, 139, 145-46, 172). When they arrived in the cell, they observed "blood all over the place," and their "main goal at that point was to get Officer Arlotta out of t[he cell] because he was obviously injured." (TT, pp. 147, 150-52). The Defendant continued to resist against the officers, and it took the strength of both officers to pull the Defendant off of CO Arlotta and place him in handcuffs. (TT, pp. 84, 131, 146, 148, 156, 172). CO Arlotta emerged from the cell with his face covered in blood. (TT, pp. 92-93, 149, 164). The Defendant, on the other hand, did not have any observable marks or injuries on his body following the attack. (TT, pp. 164, 201-02).

The majority of the Defendant's assault on CO Arlotta was captured on surveillance video taken from the POD. (TT, pp. 88-92). Although CO Arlotta could not recall how many times that he was hit, he estimated that he was inside of the cell for approximately a minute and a half before help arrived. (TT, p. 82). CO Arlotta stated that he was frightened during the attack, and he felt that he was fighting for his life. (TT, pp. 82, 92, 121 ). He sought medical attention at Mercy Hospital following the attack, and it was determined that he had suffered a broken shoulder, a

>concussion, and a laceration above his left eye. (TT. pp. 84, 119, 163).
>
>In the week following the attack, CO Arlotta experienced headaches, dizziness, and pain in his shoulder, which all impaired his ability to not only do his job, but also to engage in other activities in his daily life, like sleeping and driving. (TT, pp. 85-86). He initially was placed on light duty at work for a week. Unfortunately, after he was diagnosed with a concussion, he was unable to work at all for four (4) months. (TT, pp. 84-85). When he finally returned to work, he was placed on light duty for another six (6) months. He was also given permission to leave work as needed during that light-duty period if symptoms from his concussion surfaced. (TT, pp. 85, 87). CO Arlotta was required to call off of work and leave work early during his six (6) month period of light duty work. It should also be noted that the attack left him with a scar above his left eye. (TT, pp. 88, 122).

Trial Ct. Op., ECF No. 35-1 at 201-05 (internal citations unaltered).[1]

Petitioner was charged by criminal information on January 31, 2014. ECF No. 35-1 at 1. A jury trial commenced on April 12, 2017 – more than three years later. Trial Ct. Op., ECF No. 35-1 at 198.

On April 18, 2017, Petitioner was convicted of assault by a prisoner, simple assault, and two counts of aggravated assault, in violation of 18 Pa. C.S.A. §§ 2701-2703. Super. Ct. Op., ECF No. 35-1 at 340. On May 24, 2017, he was sentenced to an aggregate term of 8 to 16 years' incarceration, with eight years of probation and credit for 1210 days' time-served. Id. at 341; Trial Ct. Op., ECF No. 35-1, at 199.

Petitioner filed a post-sentence motion on May 26, 2017, which was denied on July 13, 2017. ECF No. 35-1 at 162. Petitioner timely filed a direct appeal, raising a single issue for review:

---

[1] This factual recitation was approved by the Pennsylvania Superior Court in its opinion affirming Petitioner's sentence on direct appeal. Super. Ct. Op., ECF No. 35-1 at 341.

4

> Did the [trial] court err and/or abuse its discretion when sentencing Mr. Talley to consecutive terms on Counts 1 and 2 of the information, as both crimes arise from one criminal act and all elements of one offense are included in the second offense, requiring merger of the charges for sentencing purposes?

ECF No. 35-1 at 243; see also Super. Ct. Op., ECF No. 35-1 at 341-42. The Pennsylvania Superior Court affirmed Petitioner's sentence on July 9, 2018. Super. Ct. Op., ECF No. 35-1 at 340. Petitioner did not seek *allocatur* from the Pennsylvania Supreme Court. As a result, his conviction became final 30 days later, on August 8, 2018. Pa. R.A.P. 1113(a).

However, in the interim, Petitioner initiated the instant federal habeas proceeding in this Court. Pursuant to the so-called prisoner mailbox rule, the Petition is deemed constructively filed on the date that it was placed in the prison mail system – presumably July 14, 2018. ECF No. 1-1 at 15. See also Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998). On September 6, 2018, this proceeding was stayed in order for Petitioner to exhaust his claims in state court. ECF No. 7. This case was briefly reopened on October 30, 2018 while Petitioner vacillated between whether to pursue an ineffective assistance of counsel claim in this Court, see ECF Nos. 8, 9, and 10, but was stayed again on November 16, 2018 on Petitioner's motion, ECF Nos. 10 and 11.

Petitioner timely filed an initial *pro se* PCRA petition with the state trial court on October 5, 2018.[2] ECF No. 35-1 at 348. Throughout the course of the proceedings in the PCRA Trial Court, he filed an amended petition, id. at 361, and several supplements as well. Id. at 494, 516, 539. Petitioner also was granted leave to represent himself *pro se* in the PCRA proceedings. Id. at 360, 493. The PCRA Trial Court held an evidentiary hearing on November 17, 2020, a bound

---

[2] Because Pennsylvania applies the so-called prisoner mailbox rule to *pro se* PCRA petitions, see, e.g., Com. v. Little, 716 A.2d 1287, 1288-89 (Pa. Super. Ct. 1998), the effective date of filing appears to be October 5, 2018 – the date on which declaration attached to the petition signed. ECF No. 35-1 at 355. However, even if the date on which the *pro se* PCRA petition was received were used as a date of filing - in this case, October 12, 2018, see id. at 348 – it would make no difference to this analysis.

copy of the transcript of which was provided to this Court by Respondents pursuant to the Response Order dated January 5, 2022. ECF No. 26 at 3.

On November 19, 2020, the PCRA Trial Court set a deadline for Petitioner to provide written testimony regarding a federal indictment that was pending during his underlying state criminal proceedings. ECF No. 35-1 at 567-68. Petitioner was allowed to provide a summary of proposed testimony of other matters as well. Id. at 568. Petitioner provided both of these to the PCRA Trial Court on November 21, 2022. Id. at 569-583. See also Docket, United States v. Talley, No. 14-265 (W.D. Pa., filed Nov. 19, 2014).

On February 16, 2021, the PCRA Trial Court issued a memorandum order denying post conviction relief. PCRA Trial Ct. Op., ECF No. 35-1 at 592. This later was adopted as the PCRA Trial Court's opinion on appeal in a later order. ECF No. 35-1 at 675-76.

Petitioner timely appealed to the Pennsylvania Superior Court on February 18, 2021. Id. at 612. He was granted leave to proceed *pro se* on appeal. Id. at 673. He ultimately presented 26 questions to the Superior Court for review in his brief. These were:

> 1. Was Attorney Kathleen Miskovich rendered ineffective for failing to litigate, raise, or address the "MOTION TO WAIVE COUNSEL" (and to proceed pros e) filed on 10/27/2014?
>
> 2. Was Attorney Miskovich rendered ineffective for failing to litigate, raise, or address the "MOTION TO DISMISS CHARGE" (Rule 600) filed on 3/11/2015?
>
> 3. Was Attorney Miskovich rendered ineffective for continuing or agreeing to the continuances without any objections, or the signature of consent by the Appellant?
>
> 4. Was Attorney Miskovich rendered ineffective for failing to properly investigate the Appellant's federal case (sentencing factors)?
>
> 5. Was Attorney Randall McKinney rendered ineffective for failing to litigate or raise the "MOTION TO WITHDRAW" filed on 3/28/2016?

6. Was Attorney Joseph Paletta rendered ineffective for failing to litigate or raise the "ORDER DENYING MOTION TO DISMISS" filed on 3/31/2015; and also the "PRETRIAL MOTION FOR CONFERENCE HEARING" (including Rule 600) filed on 7/27/2015?

7. Was Attorney Paletta rendered ineffective for continuing the case without the consent or the signature of the Appellant?

8. Was Attorney Paletta rendered ineffective for failing to properly investigate the Appellant's federal case (sentencing factors)?

9. Was Attorney McKinney rendered ineffective for failing to properly investigate the Appellant's federal case (sentencing factors)?

10. Was Attorney McKinney, Miskovich, and Paletta rendered ineffective for continuing this case in preparation for trial in defending the case, but never filed any pre-trial motions in the Appellant's defense nor did counsel(s) never discussed said strategy with the Appellant?

11. Did the trial court abuse her discretion in participating in the plea negotiations on 12/20/2016?

12. Did the trial court error in granting all 10 (ten) continuances on, 6/12/2014; 8/19/2014; 11/4/2014; 2/17/2015; 5/12/2015; 8/25/2015; 1/25/2016; 5/17/2016; 7/12/2016; and 11/29/2016 on false application of the law [pursuant] to Rule 576, and Rule 106(C)?

13. Did the trail [sic] court violate the Appellant's Due Process and Equal Protection Clause in retaliation for denial of the trial court's plea offer on 12/20/2016, by Amending the charge(s) to a greater included offense from the initial (only) charge of Assault by Prisoner pursuant to Rule 564?

14. Whether a violation of the Laws and Constitution of Pennsylvania and the United States Constitution occurred when the record does not reflect the Appellant was present at any hearing pertaining to the 10 (ten) continuances on the record?

15. Did the trial court abuse its discretion and/or commit legal error when it granted the 10 (ten) continuances on the day of the trial in violation of Rule 106?

16. Did the trial court violate the Appellant's rights when denying the Appellant the right to self representation when the Appellant

7

filed a "MOTION TO WAIVE COUNSEL" on 10/27/2014 when Appellant wrote the trial court a "LETTER" 1/6/2015; 2/19/2015; and 6/10/2015 to proceed pro se?

17. Did the trial court abuse its discretion when erroneous finding of facts pertaining to §4A1.2(a) in the Trial Court Opinion on 9/20/2017 page 16?

18. Did the trial court abuse its discretion or commit error when allowing an attorney to continue this case on the pretense of being the attorney of a co-defendant that was not identified or properly placed on the record as a co-defendant of the Appellant?

19. Did the trial court abuse its discretion or commit error when denying the Appellant's Rule 600 motion on 3/11/2015; 7/27/2015; and 4/11/2017 without a hearing?

20. Did the trial court abuse its discretion when it did not hold a colloquy pertaining to the waiver of the Appellant's rights to a speedy trial?

21. Was Attorney Vidt rendered ineffective for failing to file an Anders Brief on the Appellant's direct appeal when not disclosing the Rule 600 claim?

22. Was Attorney Vidt rendered ineffective when she relied on the trial judge to give her information to deny raising the Rule 600 issue in her brief to the Superior Court?

23. Did the trial court's erroneous fact finding pertaining to the Appellant's After-Discovery Evidence (Mr. Littlejohn) in her trial opinion on 2/16/2021 when referencing to the trial on page(s) 18-19 of her opinion?

24. Did the Commonwealth show due diligence by making sure all the continuances was made part of the record for the purpose of the Rule 600 issue?

25. Did the record show that the trial court abused its discretion when not recusing herself when showing bias and ill-will throughout the proceedings in the case on 4/10/2017; 9/20/2017; 9/27/2017; 9/19/2019; and 12/20/2016?

26. Did the trial court abuse its discretion when Amending the Charges the day before trial?

Id. at 708-11.

On November 30, 2021, the Superior Court issued an order affirming the PCRA Trial Court's denial of post conviction relief. PCRA Super. Ct. Op., ECF No. 35-1 at 951. Of the 26 issues presented in Petitioner's appeal brief, the Superior Court reviewed Issue Nos. 1-10, 23, and 25 on the merits; and Issue Nos. 11-20, 24, and 26 were deemed waived without further discussion. Id. at 955. The Superior Court addressed Issue No. 25 and denied it on the merits. Id. at 958-59. It appears to have grouped Issue Nos. 1-10 together as a combined ineffective assistance of counsel claim, and adopted the PCRA Trial Court's reasoning for denying relief. Id. at 959. It did the same with respect to Issue No. 23, Petitioner's last remaining argument regarding after-discovered evidence. Id.

On December 13, 2021, Petitioner moved to lift the stay in this federal habeas proceeding, which was granted the following day. ECF Nos. 14 and 16. Petitioner timely filed an Amended Petition on December 16, 2021. ECF No. 19. In the Amended Petition, Petitioner raised four grounds for relief.

Ground One: Violation of speedy trial rights – 6th Amendment. ECF No. 19 at 5.

Ground Two: Abuse of discretion. Id. at 7. This relates to a motion made pursuant to Rule 564 of the Pennsylvania Rules of Criminal Procedure. Id. Petitioner also asserts that this relates to violations of his rights under the Fifth and Fourteenth Amendments. Id. In their Answer, Respondents treat this as two distinct grounds for relief. ECF No. 35 at 29.

Ground Three: Ineffective assistance of direct appeal counsel. ECF No. 19 at 9. This relates to direct appeal counsel's failure to raise Petitioner's speedy trial claims on direct appeal. Id.

Ground Four: Actual innocence. Id. at 10. This relates to Petitioner's after-discovered evidence. Id.

Respondents timely answered on February 22, 2022. ECF No. 35. Respondents assert that all grounds except Petitioner's Ground Three – which Respondents call "claim IV" – are procedurally defaulted. ECF No. 35 at 27.

Petitioner submitted a Traverse on April 27, 2022. ECF Nos. 45-46. In the interim, the parties consented to the jurisdiction of a United States Magistrate Judge on January 13, 2022. ECF Nos. 18, 24, and 30.

## II.  DISCUSSION

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997); Harris v. Nelson, 394 U.S. 286, 297 (1969) ("broad-ranging preliminary inquiry is neither necessary nor appropriate in the context of a habeas corpus proceeding."). Discovery is authorized in Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Court only by leave of court upon a showing by the petitioner of "good cause," which may be made "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is … entitled to relief[.]" Harris, 394 U.S. at 300; see also Bracy, 520 U.S. at 908-09; Lee v. Glunt, 667 F.3d 397, 404 (3d Cir. 2012).

"The burden rests upon the petitioner to demonstrate that the sought-after information is pertinent and that there is good cause for its production." Williams v. Beard, 637 F.3d 195, 209 (3d Cir. 2011). "[B]ald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery" Zettlemoyer v. Fulcomer, 923 F.2d 284, 301 (3d Cir. 1991); Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir. 1987) (same). Additionally, Rule 6 does not authorize what is commonly referred to as "fishing expeditions" and it is not enough for a petitioner to speculate that the discovery he seeks might yield information that would support one of his claims or that it would give support to a new claim. See, e.g., Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir. 1994) (quoting with approval Munoz v. Keane, 777 F. Supp. 282, 287 (S.D.N.Y. 1991) ("petitioners are not entitled to go on a fishing expedition

through the government's files in [the] hopes of finding some damaging evidence")); see also Rega v. Wetzel, No. 13-cv-1781, 2014 WL 4079949, at *2 (W.D. Pa. Aug. 18, 2014); See also Tedford v. Beard, No. 09-cv-409, 2010 WL 3885207, at *4 (W.D. Pa. Sept. 28, 2010) ("Because a petitioner in a § 2254 case must first exhaust any claim in state court before he brings it in federal court, a federal court must, in considering a state prisoner's motion for discovery, take into account any lack of diligence on the petitioner's part in developing the record in state court.").

In the instant motion, Petitioner seeks the following discovery:

- the complete/entire file from the Allegheny Public Defenders Office pertaing [sic] to the case that is infront [sic] of this Honorable Court (CP-02-CR-0001397-2014), which will support the Petitioner's petition for habeas relief.

  All Petitioner's grounds for relief can be bolstered by the documents that are locate in that file as in;

  (a) did all counsel on record discuss trial strategy [sic] with the Petitioner by correspondence [sic];

  (b) are there any notations of visiting the Petitioner to discuss trial strategy;

  (c) what steps, or actions did counsel(s) take on addressing, opposing [sic], or objecting to motions filed by the Respondents, or the Petitioner;

  (d) anything on investigating any witnesses, or any pre-trial motion filed;

  (e) what actions was taken in investigating the Federal Case (14-265);

  (f) is there anything in the file of the Petitioner consenting to any [; and]

- a copy of all visitors by attorney's [sic] to the Petitioner while being housed in the Allegheny County Jail.

  (a) the attorneys on record have testified that they visit the Petitioner and discussed trial strategy with him, and have all obtain consent for the continuances that has taken.

ECF No. 39 at 1-2.

In opposing the motion with respect to the Allegheny County Public Defender's file, Respondents argue that Petitioner has not shown good cause because no underlying speedy trial violation occurred, and that they are not in possession of the file. ECF No. 42 at 4 n.1.

Upon review, the Court notes that Petitioner had requested the Allegheny County Public Defender's file from this Court once before – in a discovery motion dated January 14, 2022. ECF No. 31 at 2. That motion was denied without prejudice on January 18, 2022, pending the filing of the Answer. ECF No. 32. In that Order, Petitioner was cautioned that, with respect to his files from his former attorneys, he would have to provide details regarding any prior attempts to obtain them, and what sort of response he received in order to justify intervention of this Court. Id. at 2 n.3. Petitioner fails to provide these required details in the present motion, ECF No. 39, nor does he do so in his reply, ECF No. 44.

Petitioner is the owner of his file with the Allegheny County Public Defender's office. See Maleski by Chronister v. Corp. Life Ins. Co., 641 A.2d 1, 6 (Pa. Cmmw. Ct. 1994), opinion after grant of reh'g sub nom. Maleski v. Corp. Life Ins. Co., 646 A.2d 1 (Pa. Cmmw. Ct. 1994) ("We therefore believe that once a client pays for the creation of a legal document, and it is placed in the client's file, it is the client, rather than the attorney who holds a proprietary interest in that document. When a client requests that its property held by an attorney be turned over, under Rule 1.15(b) the attorney must comply."). As Respondents state, they do not possess that file. Petitioner further has presented no information from which this Court can conclude that Petitioner has requested his file from his former attorneys and been denied, or that this Court otherwise should involve itself in Petitioner's attempt to obtain the same.[3]

---

[3] Nothing in this Memorandum Order should be construed as a prohibition against Petitioner privately requesting his file from his former attorneys.

12

Additionally, with respect to the requested list of visitors to Allegheny County Jail, Petitioner has not met his burden to demonstrate how this discovery would help demonstrate that he is entitled to relief under any of his asserted grounds, including the standards of <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984); nor of <u>Barker v. Wingo</u>, 407 U.S. 514, 530 (1972).

### III.   CONCLUSION

For the reasons set forth herein, Petition has failed to meet his required burden to show good cause for the requested discovery. Accordingly, the instant motion will be denied.

IT IS HEREBY ORDERED, ADJUDGED and DECREED that Petitioner's "Motion for Discovery Pursuant to Rule 6(a) of the Rules Governing Section 2254 Cases," ECF No. 39, is DENIED.

Dated: November  10 , 2022               BY THE COURT:

                                         _____
                                         MAUREEN P. KELLY
                                         UNITED STATES MAGISTRATE JUDGE

cc:   ANTRON TALLEY
      QD 0481
      SCI Forest
      P.O. Box 945
      Marienville, PA 16239