**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTRON TALLEY, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 18-1006 |
| | ) | Magistrate Judge Maureen P. Kelly |
| v. | ) | |
| | ) | |
| DISTRICT ATTORNEY OF ALLEGHENY | ) | Re: ECF No. 19 |
| COUNTY and THE ATTORNEY GENERAL | ) | |
| OF THE STATE OF PENNSYLVANIA | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM OPINION**

Antron Talley ("Petitioner") currently is a federal prisoner incarcerated at FCC Petersburg Medium in Petersburg, Virginia. At the time of the initiation of this action, Petitioner was a state prisoner incarcerated at the State Correctional Institution at Forest ("SCI-Forest") in Marienville, Pennsylvania.

Petitioner seeks federal habeas relief pursuant to 28 U.S.C. § 2254 from his state criminal conviction in the Court of Common Pleas of Allegheny County at Docket No. CP-02-CR-1397-2014. ECF No. 19 at 1. For the reasons stated herein, Petitioner's operative Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "Amended Petition"), will be denied. A certificate of appealability also will be denied.[1]

**I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

The following are the facts underlying Petitioner's conviction, as recited by the trial court in connection with Petitioner's direct appeal.

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge on January 13, 2022. ECF Nos. 18, 24, and 30.

On December 19, 2013, at approximately 9:00 a.m., the Defendant, an inmate at the Allegheny County Jail, physically assaulted Jason Arlotta while Mr. Arlotta was engaged in his duties as a Correctional Officer ("CO"). (Jury Trial Transcript ("TT"), 4/12/17 - 4/18/17, pp. 7 4, 79-84, 91-92, 94, 119, 133, 145, 162, 169). At the time of the attack, CO Arlotta was performing routine searches of the inmates' cells, and Cell 123 was one of the cells subject to the search. (TT, pp. 75-77, 94-95, 204). CO Patti Farrell was present in the area while CO Arlotta conducted the cell searches. (TT, pp. 133-34, 141 ). Upon conducting his search of Cell 123, CO Arlotta located several items of contraband, such as extra linens, blankets, and a jail-made weight called a "water bag" that inmates use for weightlifting. (TT, pp. 75-76, 91, 96, 134-35). CO Arlotta removed the extra linens and blankets from the cell and then made an announcement for the resident of Cell 123 to return to the cell. (TT, pp. 76-77, 94-95, 135). CO Arlotta did not know who lived in Cell 123, and he had never met the Defendant prior to the day of the incident. (TT, pp. 77, 94).

The Defendant appeared and identified himself as the resident of Cell 123. (TT, pp. 77, 96, 135). The Defendant began picking up the extra linens that CO Arlotta had tossed out of the cell, and the Defendant told CO Arlotta that the CO was not going to remove the extra linens because they were his items. (TT, pp. 77, 90, 136). CO Arlotta instructed the Defendant to place the linens back down on the ground, but the Defendant "refused several orders" to do so. (TT, pp. 78, 91, 136, 140). The Defendant became aggressive and said "Fuck you, I'll go to the hole, I'm not afraid to go to the hole." (TT, pp. 78, 97, 140). The interaction clearly was starting to escalate, prompting CO Arlotta to contact Sergeant Popa via radio for assistance. (TT, pp. 79, 162). After the Defendant refused to obey CO Arlotta's orders three (3) or four (4) times, CO Arlotta ordered the Defendant to stand against the wall in an attempt to "deescalate the situation" and prevent the Defendant from continuing to pick the items up from the ground. (TT, pp. 79, 92, 136). The Defendant, however, refused to obey the order to stand against the wall, and he began walking away from CO Arlotta. (TT, pp. 79, 136- 37).

At that point, CO Arlotta grabbed the Defendant by his shirt and tried to escort him to the wall so that the Defendant would know where was required to stand. (TT, p. 79). Again, the Defendant failed to comply with CO Arlotta's directives, and he "began pushing back against" CO Arlotta. (Id.). Although CO Arlotta ultimately was able to place him against the wall, the Defendant was still combative. (Id.). CO Arlotta therefore, decided to place the Defendant in handcuffs in order to prevent the situation from

escalating any further.    (Id.)    As CO Arlotta reached for his
handcuffs, the Defendant "turned aggressively" and forcefully
pushed CO Arlotta. (TT, pp. 79, 215-16). The Defendant assumed
a "fighting stance" and, based on his attitude, threatening body
language, and refusal to obey orders, it was clear to CO Arlotta that
the Defendant was preparing for a physical altercation. (TT, pp. 80,
106, 137).

The Defendant began throwing hand strikes at CO Arlotta, and CO
Arlotta defended himself by throwing a hand strike which connected
with the Defendant's head. (TT, pp. 80, 106-07). The two men
grabbed hold of each other, and CO Arlotta attempted to bring the
Defendant to the ground. (TT, p. 81). However, CO Arlotta slipped
on a sheet and blanket that were on the floor outside of the cell, and
he fell to the ground. (TT, pp. 81, 100-01). The Defendant took
advantage of CO Arlotta's misstep by grabbing CO Arlotta's
uniform and pulling him inside of the cell. (TT, pp. 81, 137).

Once they were inside of the cell, and away from the surveillance
cameras, the Defendant punched CO Arlotta in the face, the side of
his head, and his left eye. (TT, . pp. 81, 109, 119, 121-22, 163, 202).
The Defendant's punches were so forceful that CO Arlotta's head
was split open, and he suffered a concussion. (TT, pp. 81, 202).
Blood began running down the side of CO Arlotta's head, and he
became "woozy." (TT, p. 82). He also felt pain in his shoulder as
he was being attacked. (TT, p. 83). Despite his injuries, CO Arlotta
regained his footing and was able to somewhat restrain the
Defendant in the back of the cell until assistance arrived. (TT, pp.
82, 130). However, the Defendant was "totally out of control" and
was still striking CO Arlotta while CO Arlotta was subduing him.
(TT, pp. 147, 153).

Despite his attempts, CO Arlotta was unable to gain full control of
the situation until Correctional Officers Parkinson and Hanley
responded to the incident. (TT, pp. 83- 84, 92, 139, 145-46, 172).
When they arrived in the cell, they observed "blood all over the
place," and their "main goal at that point was to get Officer Arlotta
out of t[he cell] because he was obviously injured." (TT, pp. 147,
150-52). The Defendant continued to resist against the officers, and
it took the strength of both officers to pull the Defendant off of CO
Arlotta and place him in handcuffs. (TT, pp. 84, 131, 146, 148, 156,
172). CO Arlotta emerged from the cell with his face covered in
blood. (TT, pp. 92-93, 149, 164). The Defendant, on the other hand,
did not have any observable marks or injuries on his body following
the attack. (TT, pp. 164, 201-02).

3

The majority of the Defendant's assault on CO Arlotta was captured on surveillance video taken from the POD. (TT, pp. 88-92). Although CO Arlotta could not recall how many times that he was hit, he estimated that he was inside of the cell for approximately a minute and a half before help arrived. (TT, p. 82). CO Arlotta stated that he was frightened during the attack, and he felt that he was fighting for his life. (TT, pp. 82, 92, 121 ). He sought medical attention at Mercy Hospital following the attack, and it was determined that he had suffered a broken shoulder, a concussion, and a laceration above his left eye. (TT, pp. 84, 119, 163).

In the week following the attack, CO Arlotta experienced headaches, dizziness, and pain in his shoulder, which all impaired his ability to not only do his job, but also to engage in other activities in his daily life, like sleeping and driving. (TT, pp. 85-86). He initially was placed on light duty at work for a week. Unfortunately, after he was diagnosed with a concussion, he was unable to work at all for four (4) months. (TT, pp. 84-85). When he finally returned to work, he was placed on light duty for another six (6) months. He was also given permission to leave work as needed during that light-duty period if symptoms from his concussion surfaced. (TT, pp. 85, 87). CO Arlotta was required to call off of work and leave work early during his six (6) month period of light duty work. It should also be noted that the attack left him with a scar above his left eye. (TT, pp. 88, 122).

Trial Ct. Op., ECF No. 35-1 at 201-05 (internal citations unaltered).[2]

Petitioner was charged by criminal information on January 31, 2014. ECF No. 35-1 at 1. A jury trial commenced on April 12, 2017 – more than three years later. Id. at 198.

On April 18, 2017, Petitioner was convicted of assault by a prisoner, simple assault, and two counts of aggravated assault, in violation of 18 Pa. C.S.A. §§ 2701-2703. Super. Ct. Op., ECF No. 35-1 at 340. On May 24, 2017, he was sentenced to an aggregate term of 8 to 16 years' incarceration, with eight years of probation and credit for 1210 days' time-served. Id. at 160-61, 199, and 341.

---

[2] This factual recitation was approved by the Pennsylvania Superior Court in its opinion affirming Petitioner's sentence on direct appeal. Super. Ct. Op., ECF No. 35-1 at 341.

Petitioner filed a post-sentence motion on May 26, 2017, which was denied by the trial court on July 13, 2017. Id. at 162. Petitioner timely filed a direct appeal, raising a single issue for review.

> Did the [trial] court err and/or abuse its discretion when sentencing Mr. Talley to consecutive terms on Counts 1 and 2 of the information, as both crimes arise from one criminal act and all elements of one offense are included in the second offense, requiring merger of the charges for sentencing purposes?

Id. at 243; see also id. at 341-42. The Pennsylvania Superior Court affirmed Petitioner's sentence on July 9, 2018. Id. at 340. Petitioner did not seek *allocatur* from the Pennsylvania Supreme Court. As a result, his conviction became final 30 days later, on August 8, 2018. Pa. R.A.P. 1113(a).

However, in the interim, Petitioner initiated the instant federal habeas proceeding in this Court. Pursuant to the so-called prisoner mailbox rule, the Petition is deemed constructively filed on the date that it was placed in the prison mail system – presumably July 14, 2018. ECF No. 1-1 at 15. See also Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998). On September 6, 2018, the instant federal action was stayed in order for Petitioner to exhaust his claims in state court. ECF No. 7. This case was briefly reopened on October 30, 2018 while Petitioner vacillated between whether to pursue an ineffective assistance of counsel claim in this Court, see ECF Nos. 8, 9, and 10, but was stayed again on November 16, 2018 on Petitioner's motion, ECF Nos. 10 and 11.

Petitioner timely filed an initial *pro se* petition pursuant to the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9541 et seq., with the state trial court on October 5, 2018.[3] ECF No. 35-1 at 348. Throughout the course of the proceedings in the PCRA trial court,

---

[3] Because Pennsylvania applies the so-called prisoner mailbox rule to *pro se* PCRA petitions, see, e.g., Com. v. Little, 716 A.2d 1287, 1288-89 (Pa. Super. Ct. 1998), the effective date of filing appears to be October 5, 2018 – the date on which declaration attached to the petition was signed. ECF No. 35-1 at 355.

Petitioner filed an amended petition, id. at 361, and several supplements as well. Id. at 494, 516, 539. Petitioner also was granted leave to represent himself *pro se* in the PCRA proceedings. Id. at 360, 493. The PCRA trial court held an evidentiary hearing on November 17, 2020.[4]

On November 19, 2020, the PCRA trial court set a deadline for Petitioner to provide written testimony regarding a federal indictment that was pending during his underlying state criminal proceedings. Id. at 567-68. Petitioner was allowed to provide a summary of proposed testimony of other matters as well. Id. at 568. Petitioner provided both of these documents to the PCRA trial court on November 21, 2022. Id. at 569-583. See also Docket, United States v. Talley, No. 14-265 (W.D. Pa., filed Nov. 19, 2014).

On February 16, 2021, the PCRA trial court issued a memorandum order denying post-conviction relief. PCRA Trial Ct. Op., ECF No. 35-1 at 592. This later was adopted as the PCRA trial court's opinion on appeal in a later order. ECF No. 35-1 at 675-76.

Petitioner timely appealed to the Pennsylvania Superior Court on February 18, 2021. Id. at 612. He was granted leave to proceed *pro se* on appeal. Id. at 673.

In his operative Amended Concise Statement of Matters Complain of on Appeal Pursuant to Pa. R. App. P. 1925(b), filed on April 14, 2021, Petitioner asserted that the PCRA trial court erred in the following ways.

> 1. Was Attorney Miskovich rendered ineffective for failing to litigate or raise the violation of the Defendant's 5th and 14th Amendment rights of Due Process Clause of the United States Constitution when not addressing the "Motion to Waive Counsel" (and to proceed prose) filed on 10/27/2014 was not adjudicated with a hearing? Answer in the negative by the lower court.
>
> 2. Was Attorney Miskovich rendered ineffective for failing to litigate or raise the violation of the Defendant's 5th and 14th Amendment right when not addressing the Defendant's "Motion to

---

[4] A bound copy of the transcript of which was provided to this Court by Respondents pursuant to the Response Order dated January 5, 2022. ECF No. 26 at 3.

Dismiss" pursuant to Pa. R. Crim. P. 600 filed on 3/11/2015 was not adjudicated with a hearing? Answer in the negative by the lower court.

3. Was Attorney Miskovich ineffective for violating the Defendant's 6th Amendment right to effective assistance of counsel when continuing or agreeing to the continuance without any objections on 8/19/2014, or obtain the signature of consent by the Defendant? Answer in the negative by the lower court.

4. Was Attorney Miskovich continuance taken on 11/4/2014 and 2/17/2015 without the Defendant's consent or signature unreasonably taken? Answer in the negative by the lower court.

5. Was Attorney Miskovich ineffective for failing to properly investigate the invalidated reasoning for continuing this case for a federal case that she did not represent the Defendant on? Answer in the negative by the lower court.

6. Was Attorney Paletta rendered ineffective for failing to litigate or raise the violation of the Defendant's 5th and 14th Amended rights when not addressing the Defendant's motion(s) "Order Denying Motion to· Dismiss" filed on 3/31/2015, and "Pretrial Motion for Conference Hearing" (also included Rule 600) filed on 7/27/2015 pursuant to Rule 576? Answer in the negative by the lower court.

7. Was Attorney Paletta ineffective for violating the Defendant's 6th Amended right to effective assistance of counsel when continuing this case on 5/12/2015 without the consent or signature by the Defendant? Answer in the negative by the lower court.

8. Was Attorney Paletta ineffective for failing to properly investigate the invalidated reasoning for continuing this case for a federal case that he did not represent the Defendant on? Answer in the negative by the lower court.

9. Was Attorney McKinney rendered ineffective for failing to litigate or raise the violation of the Defendant's 5th and 14th Amended rights when the "Motion to Withdraw" filed by said attorney was not adjudicated witha [*sic*] hearing? Answer in the negative by the lower court.

10. Was Attorney McKinney ineffective for violating the Defendant's 6th Amendment right to effective assistance of counsel when continuing this case on 7/12/2016 and 11/29/2016 without the consent or signature by the Defendant? Answer in the negative by the lower court.

11. Was Attorney McKinney ineffective for failing to properly investigate the invalidated reasoning for continuing this case for a federal case that he did not represent the Defendant on? Answer in the negative by the lower court.

12. Was Attorney's Miskovich, Paletta, and McKinney rendered ineffective for continuing this case in preparation for trial in defending the case, but never filed any pre-trial motions in the Defendant's defense, nor did counsel(s) discuss said strategy with the Defendant? Answer in the negative by the lower court.

**13. Was Attorney Vidt ineffective for failing to file an Anders Brief on the Defendant's Direct Appeal when not disclosing the Rule 600 claim? Answer in the negative by the lower court.**

**14. Was Attorney Vidt ineffective when she relied on the trial court to give her information to deny raising the Rule 600 issue in her brief to the Superior Court instead of her relying on her own investigation? Answer in the negative by the lower court.**

15. Did the trial court abuse her discretion in participating in the plea negotiations on 12/20/2016? Answer in the negative by the lower court.

16. Did the trial court abuse her discretion when denying to hold a hearing pursuant to an order by the federal court of the Western District of Pennsylvania to address the Rule 600 issue and self-representation issues infront [*sic*] of that court (Federal Case No. 15-cv-1137)? Answer in the negative by the lower court.

17. Did the trial court abuse her discretion when denying to hold a hearing pursuant to "Grazier" on 9/27/2017? Answer in the negative by the lower court.

18. Did the trial court abuse its discretion when not disposing of "all" the Defendant's issues in his Amended PCRA Petition? Answer in the negative by the lower court.

19. Did the trial court abuse its discretion or error in granting all ten (10) continuances ( 6/12/2014; 8/19/2014; 11/4/2014; 2/17/2015; 2/17/2015; 5/12/2015; 8/25/2015; 1/25/2016; 5/17/2016; 7/12/2016; and 11/29/2016) on false application of the law? Answer in the negative by the lower court.

20. Did the trial court abuse its discretion and/or commit legal error when it granted the ten (10) continuances in this case on the day trial was to commence? Answer in the negative by the lower court.

21. Did the trial court abuse its discretion or violate the DEfendant's [*sic*] Due Process and Equal Protection Clause, in retaliation for the denial of the trial court's offered plea by the Defendant on 12/20/2016, by Amending the Charge(s) to a greater included offense (felony one), from the initial (only) charge of Assault by a Prisoner (felony two)? Answer in the negative by the lower court.

22. Whether a violation of the laws and Constitution of Pennsylvania and the United States Constitution occurred when the record does not reflect that the Defendant was present at any hearings pertaining to the ten (10) continunaces [*sic*] in this case pursuant to Pa. R. Crim. P. 118 & 602? Answer in the negative by the lower court.

23. Did the trial court violate the Defendant's Due Process and Equal Protection rights when denying the Defendant the right to self-representation when the Defendant filed a "Motion to Waive Counsel" on 10/27/2014; when the Defendant wrote the trial court a "Letter" 1/6/2015; 2/19/2015; and 6/10/2015 to proceed pro se? Answer in the negative by the lower court.

24. Did the trial court abuse its discretion when erroneously finding of facts pertaining to the Defendant's federal sentence that said court did not represent the Defendant on? Answer in the negative by the lower court.

25. Did the trial court abuse its discretion or commit error when allowing an attorney to continue the case on 8/19/2014 that does not represent the Defendant on this case, or any other case? Answer in the negative by the lower court.

26. Did the trial court commit error when identifying an attorney to be a co-defendant of the Defendant that was not properly placed on the record as being a co-defendant in this case or the federal case (federal case 14-265)? Answer in the negative by the lower court.

27. Did the trial court abuse its discretion or commit error when denying the Defendant's Rule 600 motion(s) on 3/11/2015; 7/27/2015; and 4/11/2017 without a hearing? Answer in the negative by the lower court.

28. Did the trial court abuse its discretion when it did not hold a colloquy pertaining to the waiver of the Defendant's right to a speedy trial? Answer in the negative by the lower court.

**29. Did the trial court's erroneous fact finding pertaining to the Defendant's After-Discovery Evidence (Mr. Littlejohn) in denying the Defendant relief in her trial opinion on 2/16/2021**

**when referencing to the trial on page 18-19? Answer in the negative by the lower court.**

30. Did the trial court abuse its discretion or commit error when attributing the continuances on that are not part of the record to the Defendant? Answer in then negative by the lower court.

31. Does the record show that the trial court abused its discretion or/and commit government interference when showing biasness and ill-will throughout the proceedings in this case on 4/10/2017; 4/11/2017; 9/20/2017; 9/27/2017; 9/19/2019; and 12/20/2016? Answer in the negative by the lower court.

32. Did the trial judge abuse its discretion when amending the charges on the day that trial was commencing? Answer in the negative by the lower court.

33. Did the trial judge abuse its discretion by not following the order by the Superior Court to hold a "Grazier" hearing on 3/31/2021? Answer in the negative by the lower court.

ECF No. 35-1 at 664-68 (emphasis added). The only assertions with respect to the effectiveness of Petitioner's counsel on direct appeal – Attorney Vidt – relate to Pennsylvania Rule 600, and not to Petitioner's right to a speedy trial under the Sixth Amendment to the Constitution of the United States.

Petitioner ultimately presented 26 questions to the Superior Court for review in the "Statement of the Question(s) Presented" section of his PCRA appeal brief. These were:

1. Was Attorney Kathleen Miskovich rendered ineffective for failing to litigate, raise, or address the "MOTION TO WAIVE COUNSEL" (and to proceed pros e) filed on 10/27/2014?

2. Was Attorney Miskovich rendered ineffective for failing to litigate, raise, or address the "MOTION TO DISMISS CHARGE" (Rule 600) filed on 3/11/2015?

3. Was Attorney Miskovich rendered ineffective for continuing or agreeing to the continuances without any objections, or the signature of consent by the Appellant?

4. Was Attorney Miskovich rendered ineffective for failing to properly investigate the Appellant's federal case (sentencing factors)?

10

5. Was Attorney Randall McKinney rendered ineffective for failing to litigate or raise the "MOTION TO WITHDRAW" filed on 3/28/2016?

6. Was Attorney Joseph Paletta rendered ineffective for failing to litigate or raise the "ORDER DENYING MOTION TO DISMISS" filed on 3/31/2015; and also the "PRETRIAL MOTION FOR CONFERENCE HEARING" (including Rule 600) filed on 7/27/2015?

7. Was Attorney Paletta rendered ineffective for continuing the case without the consent or the signature of the Appellant?

8. Was Attorney Paletta rendered ineffective for failing to properly investigate the Appellant's federal case (sentencing factors)?

9. Was Attorney McKinney rendered ineffective for failing to properly investigate the Appellant's federal case (sentencing factors)?

10. Was Attorney McKinney, Miskovich, and Paletta rendered ineffective for continuing this case in preparation for trial in defending the case, but never filed any pre-trial motions in the Appellant's defense nor did counsel(s) never discussed said strategy with the Appellant?

11. Did the trial court abuse her discretion in participating in the plea negotiations on 12/20/2016?

12. Did the trial court error in granting all 10 (ten) continuances on, 6/12/2014; 8/19/2014; 11/4/2014; 2/17/2015; 5/12/2015; 8/25/2015; 1/25/2016; 5/17/2016; 7/12/2016; and 11/29/2016 on false application of the law [pursuant] to Rule 576, and Rule 106(C)?

13. Did the trail [sic] court violate the Appellant's Due Process and Equal Protection Clause in retaliation for denial of the trial court's plea offer on 12/20/2016, by Amending the charge(s) to a greater included offense from the initial (only) charge of Assault by Prisoner pursuant to Rule 564?

14. Whether a violation of the Laws and Constitution of Pennsylvania and the United States Constitution occurred when the record does not reflect the Appellant was present at any hearing pertaining to the 10 (ten) continuances on the record?

15. Did the trial court abuse its discretion and/or commit legal error when it granted the 10 (ten) continuances on the day of the trial in violation of Rule 106?

16. Did the trial court violate the Appellant's rights when denying the Appellant the right to self representation when the Appellant filed a "MOTION TO WAIVE COUNSEL" on 10/27/2014 when Appellant wrote the trial court a "LETTER" 1/6/2015; 2/19/2015; and 6/10/2015 to proceed pro se?

17. Did the trial court abuse its discretion when erroneous finding of facts pertaining to §4A1.2(a) in the Trial Court Opinion on 9/20/2017 page 16?

18. Did the trial court abuse its discretion or commit error when allowing an attorney to continue this case on the pretense of being the attorney of a co-defendant that was not identified or properly placed on the record as a co-defendant of the Appellant?

19. Did the trial court abuse its discretion or commit error when denying the Appellant's Rule 600 motion on 3/11/2015; 7/27/2015; and 4/11/2017 without a hearing?

20. Did the trial court abuse its discretion when it did not hold a colloquy pertaining to the waiver of the Appellant's rights to a speedy trial?

**21. Was Attorney Vidt rendered ineffective for failing to file an Anders Brief on the Appellant's direct appeal when not disclosing the Rule 600 claim?**

**22. Was Attorney Vidt rendered ineffective when she relied on the trial judge to give her information to deny raising the Rule 600 issue in her brief to the Superior Court?**

**23. Did the trial court's erroneous fact finding pertaining to the Appellant's After-Discovery Evidence (Mr. Littlejohn) in her trial opinion on 2/16/2021 when referencing to the trial on page(s) 18-19 of her opinion?**

24. Did the Commonwealth show due diligence by making sure all the continuances was made part of the record for the purpose of the Rule 600 issue?

25. Did the record show that the trial court abused its discretion when not recusing herself when showing bias and ill-will throughout the proceedings in the case on 4/10/2017; 9/20/2017; 9/27/2017; 9/19/2019; and 12/20/2016?

26. Did the trial court abuse its discretion when Amending the Charges the day before trial?

Id. at 708-11 (emphasis added). Once again, the only assertions with respect to the effectiveness of Petitioner's counsel on direct appeal in this section of the brief related to Pennsylvania Rule 600, and not to Petitioner's right to a speedy trial under the Sixth Amendment to the Constitution. That said, the undersigned acknowledges that Petitioner made passing reference in the body of his brief to his Sixth Amendment right. Id. at 715. Petitioner also cited to Barker v. Wingo, 407 U.S. 514 (1972) – the United States Supreme Court's seminal decision on the Sixth Amendment right to a speedy trial – for the proposition that he suffered prejudice due to the continuances requested by trial counsel. ECF No. 35-1 at 722.

On November 30, 2021, the Superior Court issued an order affirming the PCRA trial court's denial of post-conviction relief. PCRA Super. Ct. Op., ECF No. 35-1 at 951. See also Com. v. Talley, No. 256 WDA 2021, 2021 WL 5578752, at *1 (Pa. Super. Ct. Nov. 30, 2021). Of the 26 issues presented in Petitioner's appeal brief, the Superior Court explicitly reviewed Issue Nos. 1-10, 21-23, and 25 on the merits; Issue Nos. 11-20, 24, and 26 were deemed waived without further discussion. Id. at 955. The Superior Court addressed Issue No. 25 and denied it on the merits. Id. at 958-59. It appears to have grouped Issue Nos. 1-10 and 21-22 together as a combined ineffective assistance of counsel claim – including appellate counsel – and adopted the PCRA trial court's reasoning for denying relief. Id. at 959. It did the same with respect to Issue No. 23, Petitioner's last remaining argument regarding after-discovered evidence. Id.

On December 13, 2021, Petitioner moved to lift the stay in this federal habeas proceeding, which was granted the following day. ECF Nos. 14 and 16. Petitioner timely filed an Amended Petition on December 16, 2021. ECF No. 19. In the Amended Petition, Petitioner raised four grounds for relief.

Ground One:   Violation of speedy trial rights – 6th Amendment.  ECF No. 19 at 5.

Ground Two:   Abuse of discretion.[5]  Id. at 7.

Ground Three: Ineffective assistance of direct appeal counsel.[6]  Id. at 9.

Ground Four:   Actual innocence.[7]  Id. at 10.

Respondents timely answered on February 22, 2022.  ECF No. 35.  Respondents assert that all grounds except Petitioner's Ground Three – which Respondents call "claim IV" – are procedurally defaulted.  ECF No. 35 at 27.

Petitioner submitted a Traverse on April 27, 2022.  ECF Nos. 45-46.

The Amended Petition is ripe for adjudication.

## II.    PROCEDURAL ANALYSIS

Before this Court addresses the merits of Petitioner's federal habeas claims, it will address whether the Amended Petition fulfills the applicable procedural requirements, as set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

### A.    The AEDPA Statute of Limitations

The first consideration in reviewing a federal habeas corpus petition is whether the petition was timely filed within the applicable statute of limitations.  In 1996, Congress enacted the AEDPA, which generally established a strict one-year statute of limitations for the filing habeas petitions pursuant to 28 U.S.C. § 2254.  The applicable portion of the statute is as follows:

---

[5] This relates to a motion made pursuant to Rule 564 of the Pennsylvania Rules of Criminal Procedure.  ECF No. 19 at 7.  Petitioner also asserts that this relates to violations of his rights under the Fifth and Fourteenth Amendments.  Id.  In their Answer, Respondents treat this as two distinct grounds for relief.  ECF No. 35 at 29.

[6] This relates to direct appeal counsel's failure to raise Petitioner's speedy trial claim in her direct appeal brief, despite having asserted it in Rule 1925(b) statement.  ECF No. 19 at 9.

[7] This relates to Petitioner's after-discovered evidence.  Id. at 10.

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The United States Court of Appeals for the Third Circuit has held that the statute of limitations set out in Section 2244(d) must be applied on a claim-by-claim basis. Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004), cert. denied sub nom. Fielder v. Lavan, 543 U.S. 1067 (2005). Thus, in analyzing whether a petition for writ of habeas corpus has been timely filed under the one-year limitations period, a federal court must undertake a three-part inquiry. First, the court must determine the "trigger" date for the individual claims raised in the petition. Typically, this is the date that the petitioner's direct review concluded and the judgment became "final" for purposes of triggering the one-year period under Section 2244(d)(1)(A). Second, the court must

determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to Section 2244(d)(2). Third, the court must determine whether any of the other statutory exceptions or equitable tolling should be applied on the facts presented.  See, e.g., Munchinski v. Wilson, 807 F. Supp. 2d 242, 263 (W.D. Pa. 2011), aff'd, 694 F.3d 308 (3d Cir. 2012) (citing Nara v. Frank, No. 99-5, 2004 WL 825858, at *3 (W.D. Pa., Mar. 10, 2004)).

In the instant case, Respondents concede that the Petition is timely filed.  ECF No. 35 at 25.  A review of the record, as set forth above, supports this conclusion.  Therefore, Petitioner's claims are timely.

B.    **Exhaustion and Procedural Default**

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief.  To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state habeas proceedings, mandamus proceedings, or other available procedures for judicial review.  See, e.g., Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996) (abrogated on other grounds by Beard v. Kindler, 558 U.S. 53, 60-61 (2009)); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996).  To fairly present a claim, "[b]oth the legal theory and facts underpinning the federal claim must have been presented to the state courts." Evans v. Court of Common Pleas, Delaware Cnty., 959 F.2d 1227, 1231 (3d Cir. 1992).

Moreover, a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court, and highest available court before exhaustion will be considered satisfied.  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Lambert v. Blackwell,

387 F.3d 210, 234 (3d Cir. 2004). A petitioner shall not be deemed to have exhausted state remedies if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c). The petitioner has the burden of establishing that the exhaustion requirement has been met. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987). In the instant case, it is clear that Petitioner's claims are exhausted at the state court level at the very least in the sense that there is no state avenue for relief available to him due to the PCRA's one-year statute of limitations. See 42 Pa. C.S.A. § 9545(b).

However, beyond the question of exhaustion, a federal court may be precluded from reviewing habeas claims under the "procedural default doctrine." Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman v. Thompson, 501 U.S. 722, 732 (1991); Doctor, 96 F.3d at 678; Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996). This doctrine is applicable where, *inter alia*, a petitioner's claims are "deemed exhausted because of a state procedural bar[.]" Lines v. Larkin, 208 F.3d 153, 160 (3d Cir. 2000). Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system. In turn, it is based upon the "independent and adequate state law grounds" doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. Coleman, 501 U.S. at 750.

The PCRA's one-year statute of limitations has been held to be an "independent and adequate" state law ground for denying habeas relief. Whitney v. Horn, 280 F.3d 240, 251 (3d Cir. 2002). So too has the requirement under 42 Pa. C.S.A. § 9544(b) that "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." Garcia v. Adams, No. 17-CV-5249, 2019

WL 8015127, at *6 (E.D. Pa. Aug. 27, 2019), <u>report and recommendation adopted</u>, 2020 WL 868200 (E.D. Pa. Feb. 20, 2020), <u>aff'd sub nom.</u> <u>Garcia v. Sup't Forest SCI</u>, No. 20-1570, 2022 WL 1153122 (3d Cir. Apr. 19, 2022) (citing cases).

The United States Supreme Court has held that where a petitioner has to failed to follow state procedure within the required time period, the "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  <u>Coleman</u>, 501 U.S. at 750; <u>see also</u> <u>Wainwright v. Sykes</u>, 433 U.S. 72, 86-87 (1977) (failure to follow state's procedural rules results in procedural default, which bars federal review of petitioner's claims unless he can show cause and prejudice); <u>Hull v. Freeman</u>, 991 F.2d 86, 90-91 (3d Cir. 1993) (same).  The Supreme Court in <u>Coleman</u> further recognized "the important interest in finality served by state procedural rules and the significant harm to the States that results from the failure of federal courts to respect them."  501 U.S. at 750.

The Supreme Court has defined "cause" as "some objective factor external to the defense." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).  "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or . . . some interference by officials" are two examples, but not an exhaustive list.  <u>Id.</u>

In order to show a fundamental miscarriage of justice, the United States Supreme Court requires a petitioner to demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  <u>Schlup v. Delo</u>, 513 U.S. 298, 321 (quoting <u>Murray</u>, 477 U.S. at 496).  Under this standard, a petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  <u>Schlup</u>, 513

18

U.S at 324. Once such evidence is presented, a petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. at 327.

Here, Respondents argue that all of Petitioner's claims are defaulted, save for Ground Three, which they call "claim IV." ECF No. 35 at 27 and 29. In his Traverse, Petitioner argues that Grounds One and Two are not defaulted because he tried to raise them during his PCRA proceedings. ECF No. 45 at 10-12 and 31.

Upon review, Ground One (violation of 6th Amended speedy trial rights) and Ground Two (abuse of discretion) could have – and should have – been raised on direct appeal. They are waived if raised for the first time at the PCRA level. 42 Pa. C.S.A. § 9544(b). Thus, Grounds One and Two are procedurally defaulted.

Petitioner further argues that any procedural default of Ground One (the speedy trial claim) should be set aside due to alleged ineffective assistance of direct appeal counsel for failing to exhaust it on direct appeal. ECF No. 45 at 7, 43-47. In effect, Petitioner asserts that his claim at Ground Three establishes cause for Ground One.

But in order for ineffective assistance of counsel to qualify as "cause," counsel's assistance must, itself, be so ineffective as to qualify as an independent constitutional claim. Edwards v. Carpenter, 529 U.S. 446, 451 (2000) ("Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution. *Ibid.* In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim.") (internal citation removed; emphasis as in the original). For the reasons stated in Part III of this Memorandum Opinion, infra, appellate counsel was not ineffective for failing to litigate the speedy trial claim on

direct appeal. Therefore, Petitioner has failed to establish cause for setting aside his procedural default.

Additionally, to the extent that Petitioner argues that direct appeal counsel's alleged ineffective assistance serves as cause for Ground Two, ECF No. 45 at 44-46, he is mistaken. Direct appeal counsel's alleged ineffectiveness for not raising the claims at Ground Two on direct appeal was not exhausted in the state courts, and now would be defaulted. O'Sullivan, 526 U.S. at 845; Lambert, 387 F.3d at 234. Because of this, and because exhaustion was not excused, this alleged ineffective assistance of counsel cannot serve as cause here. Edwards, 529 U.S. at 452 and n.3.

It further appears that Petitioner intends that Ground Four (actual innocence) should be interpreted not only as a substantive claim for relief, but also as a gateway miscarriage of justice claim to excuse any procedural default. ECF No. 45 at 48.

The basis underlying this claim is the unsworn statement of Quashon Littlejohn, an inmate on Petitioner's pod at the Allegheny County Jail at the time of the assault of which Petitioner was convicted. ECF No. 45 at 57; ECF No. 19-4 at 60-62. Littlejohn testified at Petitioner's PCRA hearing. PCRA Hr'g Tr. dated Nov. 17, 2020, at 8-27. The PCRA trial court considered the evidence presented through Littlejohn as follows:

> The court finds that the testimony of Mr. Littlejohn does not warrant PCRA relief because it is not at all likely that his testimony would compel a different outcome at trial. Burton, *supra* at 629.
>
> First, the court does not find Mr. Littlejohn's testimony to be credible, as it is materially inconsistent with the testimony presented at trial. For instance, Mr. Littlejohn claimed that CO Arlotta placed the Defendant in handcuffs while inside of the Defendant's cell, (HT, p. 14), but the evidence at trial established that it was two (2) other responding COs who eventually came into the cell, pulled the Defendant off of CO Arlotta and placed him in handcuffs. (TCO, p. 7).
>
> Second, the court notes that there was no corroborating documentation presented to show that Mr. Littlejohn was actually

20

incarcerated at the Allegheny County Jail on the incident date. However, even if he was present on the incident date, Mr. Littlejohn did not have a complete and unobstructed view of the Defendant's cell, as he confirmed that he could "only see the back right-hand corner" of the Defendant's cell. (HT, pp.16, 23). He later clarified that the only part of the cell he could see was "the wall and the bed," and he conceded that he would trust the surveillance video over his own recollection. (HT, pp. 24-25).

Third, Mr. Littlejohn's testimony that the Defendant did not strike or punch CO Arlotta completely fails to account for the CO's injuries, which were substantial. As this court recounted in its TCO:

> Once they were inside of the cell, and away from the surveillance cameras, **the Defendant punched CO Arlotta in the face, the side of his head, and his left eye. (TT, pp. 81, 109, 119, 121-22, 163, 202). The Defendant's punches were so forceful that CO Arlotta's head was split open, and he suffered a concussion. (TT, pp. 81, 202). Blood began running down the side of CO Arlotta's head, and he became "woozy." (TT, p. 82). He also felt pain In his shoulder as he was being attacked.** (TT, p. 83). Despite his injuries, CO Arlotta regained his footing and was able to somewhat restrain the Defendant in the back of the cell until assistance arrived. (TT, pp. 82, 130). However, the Defendant was "totally out of control" and was still striking CO Arlotta while CO Arlotta was subduing him. (TT, pp. 147, 153).
>
> Despite his attempts, CO Arlotta was unable to gain full control of the situation until Correctional Officers Parkinson and Hanley responded to the incident. (TT, pp. 83-84, 92, 139, 145-46, 172). When they arrived in the cell, they observed **"blood all over the place,"** and their "main goal at that point was to get Officer Arlotta out of t[he cell] because he was obviously injured." (TT, pp. 14 7, 150-52 ). The Defendant continued to resist against the officers, and it took the strength of both officers to pull the Defendant off of CO Arlotta and place him in handcuffs. (TT, pp. 84, 131, 146, 148, 156, 172). **CO Arlotta emerged from the cell with his face covered in blood. (TT, pp. 92-93, 149, 164). The Defendant, on the other hand, did not have any**

**observable marks or injuries on his body following the attack.** (TT, pp. 164, 201-02).

The majority of the Defendant's assault on CO Arlotta was captured on surveillance video taken from the POD. (TT, pp .. 88-92). Although CO Arlotta could not recall how many times that he was hit, he estimated that he was inside of the cell for approximately a minute and a half before help arrived. (TT, p. 82). CO Arlotta stated that he was frightened during the attack, and he felt that he was fighting for his life. (TT, pp. 82, 92, 121 ). **He sought medical attention at Mercy Hospital following the attack, and it was determined that he had suffered a broken shoulder, a concussion, and a laceration above his left eye.** (TT, pp. 84, 119, 163).

In the week following the attack, **CO Arlotta experienced headaches, dizziness, and pain in his shoulder,** which all impaired his ability to not only do his job, but also to engage in other activities in his daily life, like sleeping and driving. (TT, pp. 85-86). **He initially was placed on light duty at work for a week. Unfortunately, after he was diagnosed with a concussion, he was unable to work at all for four (4) months. (TT, pp. 84-85). When he finally returned to work, he was placed on light duty for another six (6) months. He was also given permission to leave work as needed during that light-duty period If symptoms from his concussion surfaced. (TT, pp. 85, 87). CO Arlotta was required to call off of work and leave work early during his six (6) month period of light duty work. It should also be noted that the attack left him with a scar above his left eye.** (TT, pp. 88, 122).

(TCO, pp. 6-8) (emphasis added).

Accordingly, Mr. Littlejohn's testimony fails the after-discovered evidence test because the Defendant cannot prove that Mr. Litttlejohn's testimony would likely compel an acquittal at trial.

ECF No. 35-1 at 694-96 (emphasis as in PCRA trial court opinion).

Thus, the PCRA trial court found that Littlejohn's evidence was unlikely to lead to a different result when viewed in context with the other evidence presented at trial. The PCRA trial court's analysis explicitly was adopted by the Superior Court in its opinion affirming the denial of post-conviction relief. ECF No. 35-1 at 959.

Upon a thorough review of the evidence of record, including the trial transcript and the transcript of the PCRA hearing, this Court finds that Petitioner has failed to show, by clear and convincing evidence, that no reasonable juror would vote to convict him based on Littlejohn's testimony, especially when viewed in combination with the other record evidence. This Court's reasoning substantially mirrors that of the PCRA trial court, as set forth above.

Therefore, there is no basis to excuse Petitioner's procedural default of Grounds One and Two, and federal habeas relief as to those claims will be denied.

## III.    ANALYSIS OF THE MERITS OF REMAINING CLAIMS

### A.    Standard of Review

Where the state court has reviewed a federal issue presented to it and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state court's disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court expounded upon the standard found in 28 U.S.C. § 2254(d). The Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an

unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted).

A state court decision can be contrary to clearly established federal law in one of two ways. First, the state courts could apply a wrong rule of law that is different from the rule of law required by the United States Supreme Court. Second, the state courts can apply the correct rule of law but reach an outcome that is different from a case decided by the United States Supreme Court where the facts are indistinguishable between the state court case and the United States Supreme Court case. Lambert, 387 F.3d at 234 (quoting Williams, 529 U.S. at 405-06).

In addition, the United States Court of Appeals for the Third Circuit has explained that "Circuit precedent cannot create or refine clearly established Supreme Court law, and lower federal courts 'may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to [the Supreme] Court, be accepted as correct.'" Dennis v. Sec., Pa. Dep't of Corrs., 834 F.3d 263, 368 (3d Cir. 2016) (quoting Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (per curiam)). As the Supreme Court has further explained: "[s]ection 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." White v. Woodall, 572 U.S. 415, 428 (2014).

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Specific factual determinations by the state court that are subsidiary to the ultimate decision to grant post-conviction relief are subject to the presumption of correctness, and must be overcome

by Petitioner by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  See also Lambert, 387 F.3d at 235-36.  The Third Circuit has declined to adopt a "rigid approach to habeas review of state fact-finding."  Id. at 236 n.19.  If a state trial court and appellate court make conflicting factual findings, the habeas court must defer to the findings of the higher court – regardless of the propriety of those findings under state law – unless they are rebutted by clear and convincing evidence.  See Rolan v. Vaughn, 445 F.3d 671, 680 (3d Cir. 2006).

It is a habeas petitioner's burden to show that the state court's decision was contrary to or an unreasonable application of United States Supreme Court precedent and/or an unreasonable determination of the facts.  Ross v. Atty. Gen. of State of Pennsylvania, No. 07-97, 2008 WL 203361, at *5 (W.D. Pa. Jan. 23, 2008).  This burden means that Petitioner must point to specific caselaw decided by the United States Supreme Court and show how the state court decision was contrary to or an unreasonable application of such United States Supreme Court decisions.  Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000) ("To obtain habeas relief, Mr. Owsley must therefore be able to point to a Supreme Court precedent that he thinks the Missouri state courts acted contrary to or unreasonably applied.  We find that he has not met this burden in this appeal.  Mr. Owsley's claims must be rejected because he cannot provide us with any Supreme Court opinion justifying his position."); West v. Foster, No. 07-21, 2010 WL 3636164, at *10 n.20 (D. Nev. Sept. 9, 2010) ("petitioner's burden under the AEDPA is to demonstrate that the decision of the Supreme Court of Nevada rejecting her claim 'was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*.' 28 U.S.C. § 2254(d)(1) (emphasis added).  Petitioner has not even begun to shoulder this burden with citation to apposite United States Supreme Court authority."), aff'd, 454 F. App'x 630 (9th Cir. 2011).

To the extent that a claim was fairly presented to the state courts but was not addressed on the merits, *de novo* review applies. <u>Cone v. Bell</u>, 556 U.S. 449, 472 (2009). The same review applies to a claim that resulted from a state court decision that was contrary to or an unreasonable application of United States Supreme Court precedent and/or an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1) and (2).

**B.      Ground Three – Ineffective Assistance of Counsel**

In Ground Three, Petitioner asserts that his attorney on direct appeal was ineffective for failing to litigate his assertion of violations of his right to a speedy trial in her direct appeal brief, despite having asserted it in her Rule 1925(b) statement. ECF No. 19 at 9. <u>See also</u> ECF No. 35-1 at 188 and 251-52.

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 368 (1993) (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 684 (1984)). The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: (1) counsel's performance was unreasonable; and (2) counsel's unreasonable performance actually prejudiced the defense. <u>Strickland</u>, 466 U.S. at 687. To determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to judge counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct. <u>Id.</u> at 690.

The first prong of the <u>Strickland</u> test requires a petitioner to establish that his or her attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. <u>Id.</u> at 688. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption

26

that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." Id. at 689. The question is not whether the defense was free from errors of judgment, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place. Id. Instead, Petitioner is required to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Harrington v. Richter, 562 U.S. 86, 104 (2001) (quoting Strickland, 466 U.S. at 687). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (internal quotation omitted).

The second prong requires a petitioner to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable. Strickland, 466 U.S. at 689. To prove prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. Id.

In considering a claim of ineffectiveness of counsel, Pennsylvania uses a three-part effectiveness test.

> To plead and prove ineffective assistance of counsel a petitioner must establish: "(1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." Commonwealth v. Stewart, 84 A.3d 701, 706 (Pa. Super. 2013) (*en banc*). The failure to meet any of these aspects of the ineffectiveness test results in the claim failing. Id.

Future v. Ferguson, No. 16-2346, 2022 WL 2307095, at *8 (M.D. Pa. June 27, 2022), certificate of appealability denied sub nom. Future v. Sup't Benner Twp. SCI, No. 22-2419, 2022 WL

18536146, at *1 (3d Cir. Dec. 6, 2022). The United States Court of Appeals for the Third Circuit has found this test not to be contrary to <u>Strickland</u>. <u>Werts v. Vaughn</u>, 228 F.3d 178, 204 (3d Cir. 2000).

Here, the Superior Court grouped together the myriad of ineffective assistance of counsel claims in his PCRA proceedings, and found that they lacked merit under the reasoning of the PCRA trial court. ECF No. 35-1 at 959. This explicitly included Petitioner's claim that counsel on direct appeal was ineffective. <u>Id.</u>

In its analysis, the PCRA trial court applied Pennsylvania's three-part test to Petitioner's claims of ineffective assistance of counsel. <u>Id.</u> at 686-87.

The PCRA trial court held a hearing at which Petitioner's various counsel at trial and on direct appeal testified. The PCRA trial court characterized direct appeal counsel's testimony as follows:

> Appellate Attorney Victoria Vidt with the Public Defender's Office handled the Defendant's direct appeal in May of 2017. (HT, p. 87). She testified that the Defendant was "upset" because he had not personally consented to the defense continuances and that he was adamant about pursuing a Rule 600 issue on appeal. (HT, pp. 87-88). Attorney Vidt included the Rule 600 issue in the Concise Statement because she "wanted the court to double check" her recollection regarding who sought each continuance. (HT, pp. 87-88). However, following the issuance of the TCO, Attorney Vidt chose to forego raising the Rule 600 issue in her appellate brief because she determined that "it was not going to be a winning issue on appeal." (HT, p. 88). Notwithstanding the Defendant's legal interpretation of the Rule 600 issue, she declined to raise the issue in the appellate brief because she determined that the issue lacked merit and that she had to abide by her duty to the court, which meant refraining from raising meritless issues. (HT, pp. 88-91 ).

<u>Id.</u> at 682-83.

The PCRA trial court analyzed the ineffective assistance claims together, and denied relief.

With respect to his IAC claims, the court finds that the Defendant has failed to prove that the claims have arguable merit. The focus of Rule 600 is to ensure that the Commonwealth exercises due diligence in bringing the Defendant to trial without unnecessary delay. (See Comment to Pa. R. Crim. P. 600) (explaining that "the inquiry for a judge in determining whether there is a violation of the time periods in paragraph (A) is **whether the delay is caused solely by the Commonwealth when the Commonwealth has failed to exercise due diligence**.") (emphasis added).

Indeed, our Supreme Court has "stressed that Rule 600 'was never intended to be used as a device by which a defendant may escape responsibility for his actions.'" Commonwealth v. Barbour, 189 A.3d 944, 959 (Pa. 2018) (quoting Commonwealth v. Guldin, 463 A.2d 1011, 1014 (1983); see also Commonwealth v. Brightwell, 486 Pa. 401, 406 A.2d 503, 506 (1979) (Opinion in Support of Affirmance) ("While Rule [600] is a shield to protect defendants from undue procrastination in the commencement of proceedings against them, we refuse to over-extend the protections afforded by that Rule in a manner that would enable it to be used as a sword to allow the accused to benefit from his own misconduct.")).

As this court explained in detail in its TCO, there was no underlying Rule 600 violation in this case. (See TCO, pp. 8- 19). Indeed, the pretrial delay in this case was not the result of any failure on the part of the Commonwealth to exercise due diligence in bringing the Defendant to trial. Rather, the majority of the pretrial delay was a product of defense postponements that were secured in order to provide more time for trial preparation and to avoid potential enhancements in the Defendant's federal sentence. (See TCO, pp. 14-15). The defense postponements constituted excludable time under the speedy trial calculation and, thus, did not trigger a Rule 600 violation. (See TCO, pp. 9-15); Commonwealth v. Watson, 140 A.3d 696, 698-99) (Pa. Super. 2016) (explaining Rule 600 and noting that defense continuances could not be attributed to the Commonwealth and properly constituted excludable time).

The Defendant appears to contend that his trial attorneys were ineffective for filing postponements because the postponements were allegedly filed without his approval. To the extent that the Defendant argues that his consent was required for the postponements to be valid, our appellate court has expressly rejected that contention. Indeed, the defendant in Commonwealth v. Walley, 396 A.2d 1280, 1283 (Pa. Super. 1978) asserted that his counsel "could not validly obtain continuances and waivers of [speedy trial] rights absent [his] knowing consent noted on the record." The

Superior Court called his claim "patently frivolous" and offered the following rationale on the matter:

> We have held inferentially that counsel may request continuances that postpone trial commencement beyond the 180-day limit without the specific signed consent of his client . . . **Continuances are a matter of sound trial strategy within the reasonably purview of counsel. To hold that counsel cannot unilaterally request continuances that delay the start of trial past the [speedy trial] limit would severely hamper his ability to effectuate trial strategy.**

Id. at 1283 (emphasis added).

The Superior Court has recently reaffirmed the notion that counsel does not need to obtain the Defendant's permission in order to seek trial continuances. *See* Watson, *supra*, at 699 ("[W]e observe that [the defendant] directs us to no authority, and we are aware of none, to support his contention that counsel must obtain a defendant's permission prior to requesting a continuance.") (citing Commonwealth v. Wells, 521 A.2d 1388, 1391-92 (1987) (holding trial counsel has authority to agree to a continuance without the defendant's knowledge and consent)).

Accordingly, trial counsel did not require the Defendant's consent in order to seek continuances in this case. Since the defense postponements constituted excludable time under Rule 600, there was no speedy trial violation in this case. Consequently, there is no arguable merit to the claim that trial counsel was ineffective for filing said postponements because they did not result in a Rule 600 violation. Nor is there arguable merit to the claim that appellate counsel was ineffective for failing to raise the Rule 600 issue on appeal, as "[c]ounsel will not be deemed ineffective for failing to raise a meritless claim." Commonwealth v. Spotz, 896 A.2d 1191, 1210 (Pa. 2006).

With respect to the second prong of the IAC test, the court finds that the Defendant cannot meet his burden of proving that his trial attorneys lacked a reasonable basis for their actions in submitted postponements. While each of his attorneys testified that certain postponements were filed in order to avoid what they believed would be an enhanced federal sentence if the state case resulted in a conviction prior to his federal sentencing, they also testified that postponements were filed to allow for trial preparation.

In his post-hearing submission filed on November 30, 2020, the Defendant attached a copy of his amended federal presentence

report prepared on April 8, 2019, which showed that the inclusion of the state conviction did not ultimately affect his sentencing calculation because he was already designated under the highest criminal history category even without the inclusion of the state conviction. (*See* Exhibit 1 to the 11/30/20 filing, ¶¶ 42-43, 46, n.11 & n.13 (noting that the inclusion of the conviction did not affect his criminal history score)).

The fact that the Defendant's state court conviction did not ultimately affect his federal sentencing guideline calculation does not undermine counsel's belief that the conviction could have enhanced his federal sentence. Indeed, the United States Sentencing Guidelines § 4A1.2(a)(4) – "Definitions and Instructions for Computing Criminal History," provides that: "[w]here a defendant has been convicted of an offense, but not yet sentenced, such conviction shall be counted as if it constituted a prior sentence under § 4A1.1(c) if a sentence resulting from that conviction otherwise would be countable." A conviction on any of the Defendant's pending state charges would have been counted pursuant to the dictates of § 4A1.1(c). Accordingly, it was entirely reasonable for trial counsel to believe that a conviction in the Defendant's state case could theoretically impact the federal sentencing calculation. The fact that it ultimately did not does not invalidate their trial strategy.

To that end, the court notes that Attorney Miskovich and Attorney Paletta never even saw the Defendant's Federal Presentence Investigation Report because they were no longer representing him by the time the first report was prepared on October 29, 2015. (HT, pp. 59, 69). There is also no evidence that the Defendant ever showed Attorney McKinney his October 29, 2015 Presentence Report during the course of his representation. (TT, pp. 68-79). As such, none of his trial attorneys possessed any actual knowledge of the Defendant's federal guideline calculations, so they had every reason to believe that the conviction would enhance his federal sentence. Moreover, as noted previously, his attorneys also testified to a coexisting basis for the postponements, which was to allow more time for additional trial preparation, which is an entirely sound trial strategy.

As discussed earlier, it can be said that "counsel's chosen strategy lacked a reasonable basis only if [the defendant] proves that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." Hutchinson, supra, at 285. The Defendant has failed to prove that the chances of an acquittal would have been substantially greater if counsel had not submitted the contested postponements, especially given the fact that most of the assault was captured by surveillance video and recounted by

compelling witness testimony at trial. Accordingly, the court finds that his trial attorneys had a reasonable strategy for the continuances, and the Defendant has failed to meet his burden of proving otherwise.

Ultimately, the fact remains that the Defendant cannot satisfy the final prejudice prong of the IAC test. Aside from being generally agitated by trial counsel's submission of postponements, the Defendant has never been able to articulate how he was negatively impacted by the defense postponements. The pretrial delay did not result in any documentary evidence being lost or destroyed, nor did it impact his ability to prepare and present his defense or any witness testimony. The delay did not result in the unnecessary loss of liberty since he was also detained on his federal charges at the same time. Accordingly, the Defendant has not proven by a preponderance of evidence that he was prejudiced by the defense postponements because he cannot "show that there is a reasonable probability that the outcome of the proceedings would have been different but for" the postponements. Hutchinson, *supra*, at 285. Therefore, his IAC claim must fail.

ECF No. 35-1 at 602-08 (emphasis as in original).[8]

A review of the PCRA trial court's thorough ineffective assistance of counsel analysis above shows that, with respect to Petitioner's direct appeal counsel, it only addressed whether she was ineffective for failing to brief his speedy trial argument under Pennsylvania Rule 600 on direct appeal. Id. at 605. This is unsurprising, because counsel's failure to brief speedy trial under Rule 600 – and not the right to a speedy trial under the Sixth Amendment – was the issue raised by Petitioner in his operative Amended Concise Statement. Id. at 666. Accordingly, this is the scope of the ineffective assistance of appellate counsel claim that Petitioner exhausted in state court.

---

[8] The "TCO" referenced by the PCRA trial court is the Opinion issued by the trial court on September 20, 2017, with respect to Petitioner's direct appeal. ECF No. 35-1 at 197-227. It includes a thorough analysis  of the merits of both Petitioner's speedy trial claim under Pennsylvania Rule 600, and his right to a speedy trial under the Sixth Amendment to the Constitution of the United States. Id. at 205-216.

To the extent that Petitioner now wishes to argue that his right to a speedy trial under the Federal Constitution was violated, that argument is procedurally defaulted because he did not properly raise it before the PCRA trial court and Superior Court, and cannot do so now.[9] O'Sullivan, 526 U.S. at 845; Lambert, 387 F.3d at 234. See also Pa. R.A.P. 1925(b)(4)(ii) ("The Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge") and (vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). See also Sidberry v. Fisher, No. 11-888, 2015 WL 3866276, at *16 (W.D. Pa. June 23, 2015) (collecting cases) ("Waiver of a claim for failure to comply with the requirements of Pa. R.A.P.1925(b) and identify all issues to be reviewed on appeal has been found to be an adequate and independent ground sufficient to invoke the procedural default doctrine."). Pennsylvania Rule 600 and the Sixth Amendment right to a speedy trial are not co-extensive. Johnston v. Mahally, 348 F. Supp. 3d 417, 438 (E.D. Pa. 2018) (citing Wells v. Petsock, 941 F.2d 253, 256 (3d Cir. 1991)) As such, any assertion that appellate counsel was ineffective for failing to brief the issue of Petitioner's Sixth Amendment right to a speedy trial on direct appeal is defaulted.[10]

---

[9] To the extent necessary, this Court has authority to dismiss the defaulted portion of Ground Three *sua sponte* pursuant to Rule 4 of the Rules Governing Section 2254 Cases.

[10] Even if it were not defaulted, the undersigned would deny relief because Petitioner has failed to show that direct appeal counsel was ineffective for not raising this issue in the direct appeal brief. To determine whether there has been a deprivation of the constitutional right to a speedy trial, a court must use "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." Barker, 407 U.S. at 530. Four factors are considered: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) the prejudice to the defendant. Id. With respect to the fourth factor, there are three additional interests to be balanced: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Id. at 532 The impairment of defense is the "most serious" of the interests. Id.

(continued . . .)

   With the proper scope of Ground Three now established, it is clear that the state court's

determination was not contrary to, or an unreasonable application of the <u>Strickland</u> standard, or an

unreasonable determination of the facts.

   As the PCRA trial court had determined, delays attributable to the defendant – even when

requested by defense counsel without the defendant's explicit consent – are excludable under Rule

600 of the Pennsylvania Rules of Criminal Procedure.  Pa. R. Crim. P. 600(C)(2).  <u>See also</u> ECF

---

Here, the state trial court issued an opinion on direct appeal addressing this constitutional argument.  ECF No. 35-1 at 213-16.  The state court's factual findings must be overcome by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Even presuming that the first and third <u>Barker</u> factors weigh in favor of Petitioner, the second and fourth do not.  On balance, the totality of the factors weigh against the finding of a speedy trial violation under the Sixth Amendment.  With respect to the second factor, while 1,165 days elapsed between the filing of the criminal complaint and the beginning of trial, the bulk of that delay – 888 days – was attributable to Petitioner's counsel seeking continuance.  277 days were not; however, it appears from the record that 77 of those days (from August 19 to November 4, 2014) were attributable to a co-defendant.  This is not an unreasonable amount of time for the prosecution to prepare for trial even if Petitioner could demonstrate that all of that time was attributable to them. <u>Cf</u>. <u>Johnston</u>, 348 F. Supp. 3d at 440 (finding that 263 days was not unreasonable for the prosecution to prepare for a double murder trial).  Moreover, it appears that much of the delay was due to Petitioner's considerations in his co-pending federal criminal case, as well as to Petitioner requiring the appointment of new counsel three times.  ECF No. 35-1 at 213-14.

As to the fourth factor, Petitioner has failed to show any actual prejudice.  He already was detained on his co-pending federal criminal case, and he has not established that his defense with respect to his state case suffered.  <u>Id</u>. at 215-16.  While Petitioner alleges that he suffered prejudice due to the loss of his house, job, marriage, and alleged cruel and unusual punishment that he suffered while in Allegheny County Jail, ECF No. 45 at 28, he does not explain how he would have avoided the same issues given his co-pending pre-sentence detention while awaiting sentencing in his federal criminal case, which continued until November 12, 2019 – more than two years after his state trial concluded.  <u>See</u> <u>Talley</u>, No. 14-265, ECF Nos. 19, 83, 266, and 268.

Accordingly, Petitioner's constitutional speedy trial claim was meritless.  If such a claim were properly before this Court, it would hold that direct appeal counsel was not ineffective for not raising it in Petitioner's appeal brief.  <u>United States v. Sanders</u>, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."); <u>Ross v. Dist. Att'y</u>, 672 F.3d 198, 211 n.9 (3d Cir. 2012).

No. 35-1 at 605 (citing, e.g., Com. v. Wells, 521 A2.d 1388, 1391-92 (Pa. 1987) (trial counsel has authority to agree to a continuance without the defendant's knowledge and consent)).

Here, in a thorough opinion prepared for Petitioner's direct appeal, the state trial court calculated that all but 277 days of Petitioner's lengthy pretrial detention was attributable to Petitioner, as the remaining delay was the result of continuances requested by his counsel. ECF No. 35-1 at 211-13. This is insufficient to trigger relief under that state rule. Pa. R. Crim. P. 600(A). Thus, Petitioner's counsel was not ineffective for failing to address this argument in Petitioner's direct appeal brief. Sanders, 165 F.3d at 253; Ross, 672 F.3d at 211 n.9.

### C.      Ground Four – Actual Innocence

To the extent that Petitioner attempts to raise a stand-alone claim of actual innocence based on newly-discovered evidence, ECF No. 19 at 10, the same does not provide a basis for federal habeas relief. Instead, the United States Supreme Court has recognized that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400 (1993). See also Harper v. Wingard, No. 17-929, 2020 WL 1532288, at *11 (W.D. Pa. Mar. 31, 2020). Thus, to the extent that Ground Four is intended to be a substantive basis for federal habeas relief *in addition to* a gateway innocence claim in order to overcome a procedural bar, it must be denied.

## IV.      CERTIFICATE OF APPEALABILITY

A certificate of appealability will be denied because jurists of reason would not find the foregoing debatable. See, e.g., Slack v. McDaniel, 529 U.S. 473, 484 (2000).

## V.    CONCLUSION

For the foregoing reasons, Petitioner's operative Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, ECF No. 19, will be denied.  A certificate of appealability also will be denied.  An appropriate Order follows.

Dated: January ___2___, 2025                        BY THE COURT,


                                                    MAUREEN P. KELLY
                                                    UNITED STATES MAGISTRATE JUDGE


cc:    ANTRON TALLEY
       35449-068
       FCC Petersburg Medium
       PO Box 1000
       Petersburg, VA 23804


       All counsel of record (*via* CM/ECF)

36